UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

CITIBANK, N.A.,

                          Plaintiff,      :   08 Civ. 00569 (MGC)

            - against -

                                        :   **ORAL ARGUMENT REQUESTED**

UNITED SUBCONTRACTORS INC.,

                        Defendant.

---------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CITIBANK, N.A.'S MOTION FOR SUMMARY JUDGMENT

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 AVENUE OF THE AMERICAS   NEW YORK NY 10036

KL3 2660070.7

## TABLE OF CONTENTS

**Page**

Table of Authorities ......................................................................................................................... ii

Preliminary Statement ...................................................................................................................... 1

Statement of Facts ............................................................................................................................ 1

USI and Citibank Enter Into the Swap Agreement ........................................................................... 1

The Credit Agreement ...................................................................................................................... 2

USI Defaults Under the Credit Agreement ...................................................................................... 2

Citibank Terminates the Swap Transactions .................................................................................... 3

Argument .......................................................................................................................................... 5

I.    CITIBANK IS ENTITLED TO SUMMARY JUDGMENT ON THE
COMPLAINT'S SOLE CLAIM FOR BREACH OF CONTRACT ................................... 5

    A.    Citibank Properly Exercised Its Right To Terminate The Swap Transactions ........ 6

    B.    USI's Defenses Are Deficient As a Matter Of Law And Indisputable Fact ............ 7

        i.    There Was No Waiver of USI's Default Under the Credit Agreement
Prior to Citibank's Termination of the Swap Transactions ......................... 8

        ii.    Citibank Did Not Violate Any Good Faith Obligation .............................. 9

        iii.    USI's Equitable Defenses Are Legally Deficient ..................................... 11

II.    USI'S COUNTERCLAIM SHOULD BE DISMISSED ................................................... 12

Conclusion ..................................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                  **Page(s)**

*Aniero Concrete Co., Inc. v. New York City Construction Auth.*,
   1998 U.S. Dist. LEXIS 3938 (S.D.N.Y. Mar. 30, 1998) .................................................................. 11

*Barclays Business Credit, Inc. v. Inter Urban Broadcasting of Cincinnati, Inc.*,
   1991 U.S. Dist. LEXIS 17473 (S.D.N.Y. Nov. 27, 1991) ............................................................... 10

*Daiwa Special Assets Corp. v. Desnick*,
   2002 U.S. Dist. LEXIS 16164 (S.D.N.Y. Aug. 28, 2002) ........................................................ *passim*

*Grand Light & Supply Co., Inc. v. Honeywell, Inc.*,
   771 F.2d 672 (2d Cir. 1985) ........................................................................................................... 10

*JSC Foreign Economic Association Technostroy Export v. Int'l Dev't & Trade Services, Inc.*, 386 F. Supp. 2d 461 (S.D.N.Y. 2005) ............................................................................... 11

*Mattis v. Zheng*,
   2006 U.S. Dist. LEXIS 79325 (S.D.N.Y. Oct. 27, 2006) ............................................................... 11

*Nat'l Westminster Bank, U.S.A. v. Ross*,
   1991 U.S. Dist. LEXIS 10586 (S.D.N.Y. July 31, 1991) ............................................................... 10

*New Maine Nat'l Bank v. Liberty*,
   778 F. Supp. 86 (D. Me. 1991) ........................................................................................................ 7

*Scientific Holding Co., Ltd. v. Plessy Inc.*,
   510 F.2d 15 (2d Cir. 1974) ............................................................................................................. 11

*Suthers v. Amgen, Inc.*,
   441 F. Supp. 2d 478 (S.D.N.Y. 2006) ........................................................................................... 10

*Thrift Oil Co. v. Bank of America Nat'l Trust & Savings Ass'n*,
   310 F.3d 1188 (9th Cir. 2002) ....................................................................................................... 11

*Total Control Apparel, Inc. v. DMD Int'l Imports, LLC*,
   409 F. Supp. 2d 403 (S.D.N.Y. 2006) ........................................................................................... 12

*Towers Charter & Marine Corp. v. Cadillac Ins. Co.*,
   894 F.2d 516 (2d Cir. 1990) ....................................................................................................... 8 n.3

KL3 2660070.7

## Statutes

Fed. R. Civ. P. 56 .................................................................................................... *passim*

N.Y.U.C.C. § 1-101 ............................................................................................................ 9

N.Y.U.C.C. § 1-208 ....................................................................................................... 9, 10

KL3 2660070.7

**Preliminary Statement**

Plaintiff Citibank, N.A. ("Citibank") respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 56, for summary judgment on the Complaint's sole Claim for Relief against defendant United Subcontractor Inc. ("USI") for breach of contract. This action arises out of USI's failure to pay Citibank over $2.7 million due and owing under a swap agreement (the "Swap Agreement") pursuant to which USI and Citibank were counterparties. USI provided notice of its own default to Citibank under a certain credit agreement, which triggered a default under the terms of the Swap Agreement. As a result of USI's admitted default, on December 18, 2007, Citibank exercised its right to terminate the underlying swap transactions resulting in USI owing Citibank over $2.7 million. USI has refused, and continues to refuse, to pay Citibank the amount Citibank is owed under the Swap Agreement.

The Swap Agreement is a straight-forward agreement, resulting from an arms-length commercial transaction between sophisticated counterparties that unambiguously sets forth the parties' rights and obligations. Citibank respectfully submits that this Court need only look to the four corners of the Swap Agreement to determine that Citibank had the unqualified right to terminate the Swap Transactions upon USI's admitted default. Accordingly, summary judgment in Citibank's favor is warranted.

**Statement of Facts**[1]

*USI and Citibank Enter Into the Swap Agreement*

Citibank and USI entered into the Swap Agreement dated as of December 29, 2005. Pursuant to the Swap Agreement, on or about December 29, 2005, USI and Citibank

---

[1] The undisputed material facts are set forth in Citibank's statement pursuant to Local Rule 56.1, to which the Court respectfully is referred ("Citibank 56.1 Statement"). A summary of the relevant facts follows.

entered into three swap transactions whereby on notional amounts of $50 million, $50 million and $100 million, Citibank agreed to pay USI a fixed rate of return and USI agreed to pay Citibank a floating interest rate tied to the London Interbank Offered Rate (collectively, the "Swap Transactions"). (Citibank 56.1 Statement at ¶¶ 3-4).

*The Credit Agreement*

At or about the same time that USI entered into the Swap Agreement, USI and various lenders entered into a First Lien Credit and Guaranty Agreement dated as of December 27, 2005 (the "Credit Agreement") pursuant to which lenders agreed to extend up to $295 million in credit and additional revolving commitments to USI. Citibank was the sole letter of credit provider under the Credit Agreement. Citigroup Global Markets Inc., was the lead arranger, bookrunner and syndication agent for the Credit Agreement. Citicorp North America, Inc. ("Citicorp") was the administrative agent for the Credit Agreement. (*Id.* at ¶¶ 1-2).

*USI Defaults Under the Credit Agreement*

On or about November 12, 2007, Citibank received a Notice of Default by which USI advised Citibank that USI had exceeded certain financial covenants contained in the Credit Agreement. Therefore, USI was in default under the Credit Agreement. (*Id.* at ¶ 5).

The Swap Agreement contains a cross default provision (the "Cross Default" provision) specifically providing that a default by USI under the Credit Agreement constitutes a default under the Swap Agreement, and thereby entitling Citibank to terminate the Swap Agreement and Swap Transactions (an "Event of Default"). (*Id.* at ¶¶ 6-7). By letter dated December 12, 2007, Citibank provided USI notice advising that an Event of Default had occurred and was continuing under the Swap Agreement as a result of USI's default under the Credit Agreement. (*Id.* at ¶ 8).

*Citibank Terminates the Swap Transactions*

By December 18, 2007, USI had not cured its default under the Credit Agreement. On December 18, 2007, Citibank sent written notice to USI advising USI that December 18, 2007 had been designated as the "Early Termination Date" pursuant to the Swap Agreement. Citibank then terminated the Swap Transactions in accordance with the termination provisions of the Swap Agreement. (*Id.* at ¶ 9).

Pursuant to Section 6(e)(i) and Part 1(f) of the Swap Agreement, USI and Citibank had agreed that payments for early termination of the Swap Transactions would be calculated based on the "Second Method and Market Quotation." Citibank then calculated the early termination payment (the "Settlement Amount") that USI would owe to Citibank by obtaining market quotations for each of the Swap Transactions. Accordingly, on December 18, 2007, Citibank obtained from four banking institutions quotations for each of the Swap Transactions. The quotations expressed the dollar amounts that each of the banks would pay Citibank, or that the banks would want to be paid, to replace USI as a counterparty to the Swap Transactions. Pursuant to the Swap Agreement, Citibank calculated the Settlement Amount for each Swap Transaction by calculating the arithmetic mean of the market quotations without regard to the highest and lowest quotations. The Settlement Amount totaled $2,751,333. (*Id.* at ¶ 10).

After terminating the Swap Transactions and determining the Settlement Amount, in a second letter dated December 18, 2007, Citibank informed USI that (a) the Swap Transactions had been terminated; and (b) USI owed Citibank the Settlement Amount of $2,751,333 plus interest at the Default Rate (as defined in the Swap Agreement). (*Id.* at ¶ 11).

On December 26, 2007, USI informed Citibank via email that USI expected that the requisite number of lenders under the Credit Agreement would execute a waiver with respect to USI's defaults during the week of December 26, 2007. (*Id.* at ¶ 12).

Citicorp, in its capacity as Administrative Agent for the Credit Agreement, received a copy of an executed Waiver and Amendment Agreement (the "Waiver and Amendment") on December 27, 2007, nine days after the Swap Transactions had been terminated. (*Id.* at ¶ 13). The Waiver and Amendment provides, *inter alia*, that USI's default under the Credit Agreement constitutes "multiple Events of Default", that those defaults "are continuing" and that the "Existing Defaults" are continuing Events of Default. (*Id.* at ¶ 14).

## Argument

### I.

### CITIBANK IS ENTITLED TO SUMMARY JUDGMENT ON THE COMPLAINT'S SOLE CLAIM FOR BREACH OF CONTRACT

Summary judgment should be granted when "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party satisfies its burden of demonstrating the absence of any genuine issue of material fact, "the nonmoving party must come forward with specific facts to show there is a factual question that must be resolved at trial . . . [the nonmoving party] may not simply rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Daiwa Special Assets Corp. v. Desnick*, 2002 U.S. Dist. LEXIS 16164, at *10 (S.D.N.Y. Aug. 28, 2002) (internal citations omitted). The meaning of an unambiguous contract is a legal question and is properly determined on a motion for summary judgment. *Id.* at *11 (citing *Banco Espanol de Credito v. Security Pacific Nat'l Bank*, 763 F. Supp. 36, 45 (S.D.N.Y. 1991).

As set forth below, there are no material facts in dispute: The Agreements are unambiguous and the material facts are undisputed. USI provided Citibank with notice of its own default under the Credit Agreement. That default constituted a default under the Swap Agreement. Pursuant to the Swap Agreement, Citibank terminated the Swap Transactions. Accordingly, Citibank is entitled to judgment in the amount due under the Swap Agreement, which totals $2,751,333 plus interest at the Default Rate.

KL3 2660070.7

A.    Citibank Properly Exercised Its Right
To Terminate The Swap Transactions

Section 5(a)(vi)(1) of the Swap Agreement provides that an Event of Default occurs if USI defaults under the Credit Agreement, which is defined as a "Cross Default." Pursuant to Section 6(a) of the Swap Agreement, Citibank had the right to terminate the Swap Transactions if an Event of Default occurred as a result of a Cross Default. USI admits, as it must, that the Swap Agreement contains the cross default provision and that Citibank had the right to terminate the Swap Transactions in the event that a cross default occurred. (Answer at ¶ 9).

USI provided Citibank with its Notice of Default advising that USI was in default under the Credit Agreement. USI admits that it was in default under the Credit Agreement, that Citibank declared an Event of Default under the Swap Agreement as a result of USI's default under the Credit Agreement, and that Citibank exercised its rights to terminate the Swap Transactions as a result of the Event of Default. (*Id.* at ¶¶ 10-12).

By virtue of USI's default, pursuant to Section 6(a) of the Swap Agreement, Citibank terminated the Swap Transactions. The unambiguous provisions of the Swap Agreement, together with USI's admissions, entitle Citibank to summary judgment.

The Court's opinion in *Daiwa* is directly on point. There, Daiwa terminated a loan and security agreement ("LSA"), in part, because a cross default occurred. *Daiwa*, 2002 U.S. Dist. LEXIS 16164 at *6. Daiwa entered into the LSA as part of a receivable securitization transaction with several parties, including MMA Funding, L.L.C. ("MMA"). *Id.* at *1-2. MMA was also party to a separate mortgage agreement with Nomura (the "Nomura Mortgage"). *Id.* at *3. Subsequently, Daiwa learned that MMA was in default under the Nomura Mortgage for failing to comply with financial reporting requirements in the Nomura Mortgage. *Id.* at *16-17.

MMA's default under the Nomura Mortgage constituted a default under the LSA by reason of a cross default provision contained in the LSA. *Id.* at *16, *19-20. As a result of MMA's default under the Nomura Mortgage, Daiwa declared a default under the LSA. *Id.* at *6. Daiwa subsequently brought claims against MMA's principal shareholder to recover monies owing on previous credit advances by Daiwa. In granting summary judgment in favor of Daiwa, the court held, based upon the unambiguous terms of the agreements – including the cross default provision – that Daiwa's declaration of default under the LSA was proper. *Id.* at *19, 61. *See also New Maine National Bank v. Liberty*, 778 F. Supp. 86, 90-91 (D. Me. 1991) (as a matter of law cross default provision was unambiguous and entitled plaintiff to summary judgment on guarantees).

In light of the undisputed facts that USI defaulted under the Swap Agreement and Citibank had the right to terminate the Swap Transactions, Citibank is entitled to summary judgment on its breach of contract claim.[2]

    B.    USI's Defenses Are Deficient As a Matter
           Of Law And Indisputable Fact

Unable to deny its default under the Swap Agreement and Citibank's right to terminate the Swap Transactions, USI pleads several affirmative defenses that do not survive summary disposition.

---

[2] As set forth in the accompanying affidavit of Carl S. Cho, dated June 17, 2008 ("Cho Aff."), in accordance with the Swap Agreement, the amount owing Citibank for terminating the Swap Transactions is $2,751,333 plus interest at the Default Rate.

i. There Was No Waiver of USI's Default
Under the Credit Agreement Prior to
<u>Citibank's Termination of the Swap Transactions</u>

In its second affirmative defense, USI alleges that Citibank was bound by a waiver of USI's default agreed to by lenders under the Credit Agreement. USI's waiver defense is fundamentally flawed and provides no basis to avoid summary judgment.

*First*, the indisputable facts are that the Waiver and Amendment relied upon by USI had not been agreed to at the time that Citibank terminated the Swap Transactions. It is indisputable that the Waiver and Amendment was not finalized until December 27, 2007, nine days <u>after</u> Citibank had already terminated the Swap Transactions.[3]

*Second*, and in any event, the Waiver and Amendment itself specifically provides that USI's default under the Credit Agreement constitutes "multiple Events of Default" (Cho Aff., Exh. J at p. 1), that those defaults "are continuing" and that the "Existing Defaults" are continuing Events of Default and treated as such. (Cho Aff., Exh. J at Sections 3.1, 3.2(c) and (d)). Accordingly, the events of default under the Credit Agreement were continuing as acknowledged and agreed to by USI. Thus, even if the Swap Agreement and the Swap Transactions had not been terminated, the Cross Default provision of the Swap Agreement would have entitled Citibank to terminate the Swap Transactions notwithstanding the Waiver and Amendment.

---

[3] Pursuant to Section 10.04(a) of the Credit Agreement, a waiver of USI's default under the Credit Agreement is not effective without the "written concurrence of the Requisite Lenders." Under New York law, contractual provisions requiring that waivers or amendments be in writing are routinely enforced. *See e.g.*, *Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516, 521 (2d Cir. 1990). The Credit Agreement defines "Requisite Lenders" as "one or more Lenders having or holding Tranche B Term Loan Exposure and/or Revolving Exposure and representing more than 50% of the sum of (i) the aggregate Tranche B Term Loan Exposure and (ii) the aggregate Revolving Exposure of all Lenders." (Cho Aff., Exh. A at Section 1.01, p. 28). Insofar as USI claims that the Requisite Lenders orally agreed to a waiver of default, any such oral understanding would not be binding or enforceable. *Towers Charter & Marine Corp.*, 894 F.2d at 521 (where agreement required amendments and waivers to be in writing, the alleged oral modifications were "presumptively unenforceable.").

### ii. Citibank Did Not Violate Any Good Faith Obligation

USI asserts as its third affirmative defense that Citibank could not terminate the Swap Transactions "unless it had a good faith belief that its prospects for payment or performance were impaired." (Answer at ¶ 18). USI subsequently clarified that its defense is based upon Section 1-208 of New York's Uniform Commercial Code (the "UCC"). (*See* USI letter to Court dated April 15, 2008). USI's good faith defense is meritless.

As a threshold issue, the UCC, codified at N.Y.U.C.C. § 1-101 *et seq.*, does not apply to the Swap Agreement or the Swap Transactions. The UCC applies to only the following subjects: sales contracts, leases, commercial paper, bank deposits and collections, funds transfers, letters of credit, warehouse receipts, investment securities, and secured transactions. Here, USI and Citibank entered into three floating interest rate swaps. The International Swaps and Derivatives Association defines interest rate swaps as:

> [A]greement[s] to exchange interest rate cash flows, calculated on a notional principal amount, at specified intervals (payment dates) during the life of the agreement[s]. Each party's payment obligation is computed using a different interest rate. In an interest rate swap, the notional principal is never exchanged . . . a plain vanilla swap typically refers to a generic interest rate swap in which one party pays a fixed rate and one party pays a floating rate (usually LIBOR).

*See* International Swaps and Derivatives Associations' Product Descriptions, *available at* www.isda.org. Interest rate swaps, such as the subject Transactions, simply do not fall within the UCC's scope.

Even assuming *arguendo* that the UCC applied to the Swap Agreement, Section 1-208 by its express terms does not apply to the Swap Agreement. Section 1-208 provides as follows:

> A term providing that one party or his successor in interest may accelerate pay or performance or require collateral or additional

KL3 2660070.7

> collateral "at will" or "when he deems himself insecure" or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired.

N.Y.U.C.C. § 1-208. The Cross Default provision of the Swap Agreement is not an acceleration clause contemplated by the UCC and it does not contain the language required under this section. Therefore, Section 1-208 does not apply to the Swap Agreement.

The Cross Default provision is clear on its face: USI's default under the Credit Agreement constitutes a default under the Swap Agreement. USI, by alleging that Citibank had to believe in good faith that USI's prospects for payment or performance were impaired in order to enforce the Cross Default provision, reads into the Swap Agreement provisions that do not exist. (Answer at ¶¶ 18 and 37). Governing New York law is clear that a party cannot use the obligation of good faith to alter the terms of an agreement: "[t]he parties' contractual rights and liabilities may not be varied, *nor their terms eviscerated*, by a claim that one party has exercised a contractual right but has failed to do so in good faith." *Nat'l Westminster Bank, U.S.A. v. Ross*, 1991 U.S. Dist. LEXIS 10586, at **59 (S.D.N.Y. July 31, 1991) (emphasis added). *See also Grand Light & Supply Co., Inc. v. Honeywell, Inc.*, 771 F.2d 672, 679 (2d Cir. 1985) (court held that UCC good faith provision could not override explicit termination provision in contract); *Barclays Business Credit, Inc. v. Inter Urban Broadcasting of Cincinnati, Inc.*, 1991 U.S. Dist. LEXIS 17473, at *19-20 (S.D.N.Y. Nov. 27, 1991) (the UCC's obligation of good faith cannot be used to require a party "to forego or surrender a right that it otherwise possesses"); and *Suthers v. Amgen, Inc.*, 441 F. Supp. 2d 478, 485 (S.D.N.Y. 2006) (parties cannot rely on the implied covenant of good faith and fair dealing to add substantive provisions to a contract).

USI's invocation of Citibank's subjective beliefs would render meaningless Citibank's right to terminate pursuant to the Cross Default provision, a common term in

KL3 2660070.7

commercial transactions. *See e.g., Thrift Oil Co. v. Bank of America Nat'l Trust & Savings Ass'n*, 310 F.3d 1188, 1192 (9th Cir. 2002) (interest rate swaps are typically governed by the ISDA Master Agreement, which includes cross default provisions). Such a result would run contrary to the fundamental principles of contract law which presume that parties may rely upon the promises memorialized in written agreements. *See e.g., Scientific Holding Co., Ltd. v. Plessy Inc.*, 510 F.2d 15, 22 (2d Cir. 1974) ("Prime objectives of contract law are to protect the reasonable expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract").

   iii. USI's Equitable Defenses Are Legally Deficient

For its fourth and fifth affirmative defenses, USI pleads equitable doctrines of estoppel and unclean hands. As in *Daiwa*, these defenses are insufficient as a matter of law "because they are equitable defenses that have no place in an action at law . . ." *Daiwa*, 2002 U.S. Dist. LEXIS 16164 at *35; *Aniero Concrete Co., Inc. v. New York City Constr. Auth.*, 1998 U.S. Dist. LEXIS 3938, at *33 (S.D.N.Y. Mar. 30, 1998) (equitable defense of unclean hands unavailable to action at law for money damages); and *JSC Foreign Economic Ass'n Technostroy Export v. Int'l Dev't & Trade Servs., Inc.*, 386 F. Supp. 2d 461, 477 (S.D.N.Y. 2005) (same). Moreover, with respect to estoppel, USI has not pled the requisite elements for this defense. *See e.g., Mattis v. Zheng*, 2006 U.S. Dist. LEXIS 79325, at *11 (S.D.N.Y. Oct. 27, 2006) (to establish the equitable estoppel defense, a party "must show (1) an act constituting a concealment of facts or a false misrepresentation; (2) an intention or expectation that such acts will be relied upon; (3) actual or constructive knowledge or the true facts by the wrongdoers; [and] (4) reliance upon the false misrepresentations, which causes the [other party] to change its position to its substantial detriment.").

KL3 2660070.7

USI's unclean hands defense requires a finding of bad faith which, as discussed above, does not exist here. *Daiwa*, 2002 U.S. Dist. LEXIS 16164 at *35; *Total Control Apparel, Inc. v. DMD Int'l Imports, LLC*, 409 F. Supp. 2d 403, 410 (S.D.N.Y. 2006) (the doctrine of unclean hands applies to "conduct involving fraud, deceit, unconscionability, or bad faith[.]").

Accordingly, USI's affirmative defenses are no impediment to the granting of summary judgment in Citibank's favor.

## II.

### USI'S COUNTERCLAIM SHOULD BE DISMISSED

USI asserts a counterclaim alleging that Citibank breached the Swap Agreement by terminating the Swap Transactions. The counterclaim, however, is based on the same arguments USI advances as affirmative defenses.

As set forth above, because Citibank was entitled to terminate the Swap Transactions, and USI's defenses are insufficient as a matter of law and indisputable fact, summary judgment dismissing USI's counterclaim should be granted.

KL3 2660070.7

## Conclusion

For the foregoing reasons, Citibank respectfully requests that the Court grant its motion for summary judgment (i) on its Claim for Relief against USI for breach of contract, and (ii) dismissing USI's counterclaim, together with such other, further and different relief as the Court deems just and proper.

Dated: New York, New York
       June 19, 2008

Respectfully submitted,

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: _____
    Marshall H. Fishman (MF-4944)
    Erin E. Oshiro (EO-8878)

1177 Avenue of the Americas
New York, New York 10036
Tel.: (212) 715-9100
mfishman@kramerlevin.com
eoshiro@kramerlevin.com

Attorneys for Plaintiff