UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CITIBANK, N.A.,

                              Plaintiff,

             -against-

UNITED SUBCONTRACTORS INC.,

                              Defendant.
------------------------------------------------------------X

08 Civ. 00569 (MGC)

**Defendant's Response to Citibank N.A.'s Statement Pursuant to Local Rule 56.1 And Counter-Statement**

Pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern District of New York, and in opposition to Citibank, N.A.'s ("Citibank") motion for summary judgment, defendant United Subcontractors Inc. ("USI") respectfully submits the following response to Citibank's statement of material facts and USI's counterstatement of additional material disputed facts.

## USI'S RESPONSE TO CITIBANK'S STATEMENTS

### Plaintiff's Statement No. 1

In December 2005, USI and other parties entered into a First Lien Credit and Guaranty Agreement dated as of December 27, 2005 (the "Credit Agreement" pursuant to which lenders agreed to extend up to $295 million in credit and additional revolving commitments to USI. Citibank was the letter of credit provider under the Credit Agreement. (Affidavit of Carl S. Cho In Support of Citibank N.A.'s Motion for Summary Judgment, dated June 17, 2008 ("Cho Aff."), at ¶ 2 and Exh. A).

**Response:** USI admits the foregoing except it states that the Credit Agreement states on its face that the lenders agreed to extend up to $335 million in credit to USI. Affidavit of Timothy J. Gallagher, dated July 22, 2008 ("Gallagher Aff."), Exh. A.

### Plaintiff's Statement No. 2

A Citibank affiliate, Citigroup Global Markets Inc. was the lead arranger, bookrunner and syndication agent for the Credit Agreement. Another Citibank affiliate, Citicorp North America, Inc. ("Citicorp") was the administrative agent under the Credit Agreement. (Cho Aff., at ¶ 2 and Exh. A).

**Response:** Admitted.

### Plaintiff's Statement No. 3

Simultaneously with USI's entering into the Credit Agreement, Citibank and USI entered into a swap agreement (the "Swap Agreement") dated as of December 29, 2005. (Cho Aff., at ¶ 3 and Exh. B).

**Response:** Admitted.

### Plaintiff's Statement No. 4

On or about December 29, 2005, pursuant to the Swap Agreement, USI and Citibank entered into three swap transactions whereby on notional amounts of $50 million, $50 million and $100 million, Citibank agreed to pay USI a fixed rate of return and USI agreed to pay Citibank a floating interest rate tied to the London Interbank Offered Rate ("LIBOR") (collectively, the "Swap Transactions"). (Cho Aff., at ¶ 3 and Exh. C).

**Response:** Admitted.

### Plaintiff's Statement No. 5

On or about November 12, 2007, USI provided Citibank with a Notice of Default advising Citibank that USI had exceeded certain covenants contained in the Credit Agreement and that USI was therefore in default under the Credit Agreement. (Cho Aff., at ¶ 4 and Exh. D).

**Response:** USI admits that it sent a Notice of Default on November 12, 2007, but states that Citibank has not described the document in its entirety, including the portion by which USI advised all lenders that it had already begun negotiating an amendment to the Credit Agreement to modify the financial covenants therein and thereby cure the default. Affidavit of Timothy J. Gallagher, dated July 25, 2008 ("Gallagher Aff."), Exh. C.

### Plaintiff's Statement No. 6

Section 5(a)(vi)(1) of the Swap Agreement provides that an Event of Default occurs if USI defaults under the Credit Agreement which is defined as a "Cross Default." (Cho Aff., at ¶ 5 and Exh. B).

**Response:** Admitted.

### Plaintiff's Statement No. 7

Section 6(a) of the Swap Agreement provides Citibank the right to terminate the Swap Transactions if an Event of Default occurred as a result of a Cross Default. (Cho Aff., at ¶ 5 and Exh. B).

**Response:** USI objects to Statement No. 7 because it is legal conclusion, not a statement of fact. USI also objects because Citibank's right to terminate under Section 6(a) of the Swap Agreement was circumscribed by its duty of good faith under common law, § 205 of the Restatement (Second) of Contracts, and the UCC §§ 1-203 and 1-208.

### Plaintiff's Statement No. 8

By letter dated December 12, 2007, Citibank provided written notice under the Swap Agreement advising USI that, by reason of USI's default under the Credit Agreement, an Event of Default had occurred and was continuing under the Swap Agreement. (Cho Aff., at ¶ 5 and Exh. E).

**Response:** USI admits that Citibank sent a letter dated December 12, 2007, providing written notice that an Event of Default had occurred, but states that a factual issue exists whether Citibank properly did so because, in accordance with Section 10.04 of the Credit Agreement, there had been written concurrence by the Requisite Lenders to waive the default that Citibank was relying upon. Gallagher Aff., ¶¶ 15-17 and Exhs. D and E.

### Plaintiff's Statement No. 9

On December 18, 2007, Citibank advised USI that Citibank had designated December 18, 2007 as the "Early Termination Date" pursuant to the Swap Agreement. Citibank then terminated the Swap Transactions in accordance with the termination provisions of the Swap Agreement. (Cho Aff., at ¶ 6 and Exh. F).

**Response:** USI denies that Citibank terminated the Swap Transactions in accordance with the Swap Agreement -- Citibank's termination of the Swap Transactions constituted a breach of contract because the Requisite Lenders had provided their "written concurrence" to the waiver of the default at issue. Citibank also violated its duty of good faith to USI. Gallagher Aff., ¶¶ 15, 19-25, 29-33 and Exhs. D, G, H; Declaration of Robert B. Bernstein, dated July 25, 2008 ("Bernstein Decl."), Exh. A.

### Plaintiff's Statement No. 10

Pursuant to Section 6(e)(i) and part 1(f) of the Swap Agreement, USI and Citibank had agreed that payments for early termination of the Swap Transactions would be calculated based on the "Second Method and Market Quotation." (Cho Aff. at ¶ 7 and Exh. B). Citibank then calculated the early termination payment (the "Settlement Amount") that USI would owe to Citibank by obtaining market quotations for each of the Swap Transactions. Accordingly, on December 18, 2007, Citibank obtained from four banking institutions quotations for each of the Swap Transactions. The quotations expressed the dollar amounts that each of the banks would pay Citibank, or that the banks would want to be paid, to replace USI as a counterparty to the Swap Transactions. Pursuant to the Swap Agreement, Citibank calculated the Settlement Amount for each Swap Transaction by calculating the arithmetic mean of the market quotations without regard to the highest and lowest quotations. The Settlement Amount totaled $2,751,333. (Cho Aff., at ¶ 7 and Exh. G).

**Response:** Absent discovery, USI is not in a position to verify the means by which Citibank calculated the Settlement Amount. Furthermore, USI denies that Citibank terminated the Swap Transactions in accordance with the Swap Agreement -- Citibank's termination of the Swap Transactions constituted a breach of contract because the Requisite Lenders had provided their "written concurrence" to the waiver of the default at issue. Citibank also violated its duty of good faith to USI. Gallagher Aff., ¶¶ 15, 19-25, 29-33 and Exhs. D, G, H; Bernstein Decl., Exh. A.

### Plaintiff's Statement No. 11

After terminating the Swap Transactions and determining the amount USI owed Citibank, in a second letter dated December 18, 2007, Citibank informed USI that (a) the Swap Transactions had been terminated; and (b) USI owed Citibank $2,751,333 plus interest at the Default Rate (as defined in the Swap Agreement). (Cho Aff., at ¶ 8 and Exh. H).

**Response:** USI admits that Citibank sent USI a letter purporting to state the amounts owed as a result of Citibank's termination of the Swap Transactions. However, USI denies that Citibank terminated the Swap Transactions in accordance with the Swap Agreement -- Citibank's termination of the Swap Transactions constituted a breach of contract because the Requisite Lenders had provided their "written concurrence" to the waiver of the default at issue. Citibank also violated its duty of good faith to USI. Gallagher Aff., ¶¶ 15, 19-25, 29-33 and Exhs. D, G, H, I, and J; Bernstein Decl., Exh. A.

### Plaintiff's Statement No. 12

As of December 18, 2007, the date on which Citibank exercised its right to terminate the Swap Transactions, USI had not obtained an executed waiver of its default under the Credit Agreement. (Cho Aff. at ¶ 9). On December 26, 2007, USI informed Citigroup that USI expected that the requisite number of lenders under the Credit Agreement would execute a

waiver with respect to USI's defaults during the week of December 26, 2007. (Cho Aff. at ¶ 9 and Exh. I). (Cho Aff., at ¶ 9 and Exh. I).

**Response:** USI denies that an executed wavier was necessary to waive the default under the Credit Agreement. Pursuant to Section 10.04 of the Credit Agreement, a waiver by "written concurrence" of the Requisite Lenders was all that was required. USI had already obtained such "written concurrence." Gallagher Aff., ¶ 12, 15, 19-22 and Exhs. A, D, G, and H; Bernstein Decl., Exh. A.

### Plaintiff's Statement No. 13

Citicorp, in its capacity as Administrative Agent for the Credit Agreement, received a copy of an executed Waiver and Amendment Agreement on December 27, 2007, nine days after the Swap Transactions had been terminated. (Cho Aff., Exh. J at 1 and Sections 3.1, 3.2(c) and (d)).

**Response:** USI admits that the executed Waiver and Amendment Agreement was circulated on or about December 27, 2007, but states that the waiver of the default had already been granted by the "written concurrence" of the Requisite Lenders. Gallagher Aff., ¶¶ 15, 19-22 and Exhs. D, G, and H; Bernstein Decl., Exh. A.

### Plaintiff's Statement No. 14

The Waiver and Amendment provides that USI's default under the Credit Agreement constitutes "multiple Events of Default", that those defaults "are continuing" and that the "Existing Defaults" are continuing Events of Default.

**Response:** USI admits that Citibank has accurately quoted selected portions of the Waiver and Amendment Agreement.

## USI'S ADDITIONAL STATEMENTS OF MATERIAL FACTS IN DISPUTE

### Defendant's Statement No. 1

USI contacted Citibank when it anticipated that its future quarterly earnings would cause a default of certain financial covenant rations by the end of the third or fourth quarter of 2007. Citibank stated that its non-negotiable fee for taking the lead in negotiations to amend the Credit Agreement would be $1.5 million. Gallagher Aff., ¶¶ 11-12.

### Defendant's Statement No. 2

Under Section 10.04 of the Credit Agreement, lenders holding more than 50% of the outstanding debt ("the Requisite Lenders") can waive a default by providing their "written concurrence." "Written concurrence" does not require a fully executed agreement. Gallagher

5

Aff., ¶ 12 and Exh. A.

### Defendant's Statement No. 3

The Requisite Lenders were represented by Cahill Gordon & Reindel LLP ("Cahill Gordon"), who were also Citibank's counsel. Gallagher Aff., ¶ 13.

### Defendant's Statement No. 4

On November 20, 2007, counsel for the Requisite Lenders circulated a Term Sheet to modify the financial covenants in the Credit Agreement and waive the default. The Term Sheet provided for a waiver by the Requisite Lenders of "the default caused by the Borrower's failure to comply with the financial covenants set forth in Section 6.08 of the First Lien Credit Agreement for the Fiscal Quarter ending September 30, 2007." The Note accompanying the Term Sheet stated in pertinent part as follows: "The Term Sheet has been drafted by Lender counsel, Cahill Gordon & Reindell, and has been agreed with the First Lien Lender Steering Committee, which represents a majority of the First Lien Term Loan Lenders." The Note and Term Sheet reflected the Requisite Lenders' "written concurrence" to the default. Gallagher Aff., ¶ 15 and Exh. D

### Defendant's Statement No. 5

The Term Sheet circulated on November 20, 2007 set forth, as a condition precedent to the amendment's effectiveness, that there would be amendment to two other agreements, the Second Lien Credit Agreement and an Intercreditor Agreement. Citibank was a creditor in the Second Lien and Credit Agreement. Gallagher Aff., ¶¶ 15-16 and Exh. D.

### Defendant's Statement No. 6

When Citibank advised USI on December 12, 2007 that it was declaring an Event of Default under the Swap Agreement and that Citibank intended to terminate the swaps, it had no reason to believe that its prospects for repayment or performance had been impaired. Gallagher Aff., ¶¶ 10, 18-19, 30-33 and Exh. E.

### Defendant's Statement No. 7

At USI's request on December 12, 2007, the Requisite Lenders agreed not to tie their "written concurrence" to the default waiver to amending the Second Lien Credit Agreement and the Intercreditor Agreement. The Requisite Lenders had already effectively agreed to forebear from exercising their rights concerning the Credit Agreement default. Gallagher Aff., ¶¶ 19-20 and Exh. F.

### Defendant's Statement No. 8

On or about December 13, 2007, the Requisite Lenders instructed Cahill Gordon to prepare a Default Waiver that did not require amending the Second Lien Credit Agreement and the Intercreditor Agreement. Cahill Gordon circulated a draft Default Waiver to the

Requisite Lenders for their approval on the evening of December 13, 2007. On the afternoon of December 14, 2007, Cahill Gordon sent a revised agreement to the Requisite Lenders for their approval, and instructed them that absent any objection, it would forward a copy to USI. Bernstein Decl., Exh. A.

### Defendant's Statement No. 9

On December 14, 2007, Cahill Gordon sent USI a draft Waiver and Amendment on behalf of the Requisite Lenders. This document reflected the second "written concurrence" of the Requisite Lenders to the waiver of the default that had been the subject of USI's Notice of Default. Gallagher Aff., ¶¶ 21-22 and Exh. H.

### Defendant's Statement No. 10

As of December 14, 2007, Citibank either knew directly, or knew based on their counsel's knowledge, that the Requisite Lenders had provided their "written concurrence" to the waiver of the default under the Credit Agreement. Gallagher Aff., ¶¶ 15, 20-22 and Exhs. D, G, H; Bernstein Decl., Exh. A.

### Defendant's Statement No. 11

On December 18, 2007, hours after Citibank notified USI that it would seek to terminate the swaps on that day, USI responded by fax, advising Citibank that lenders who held more than 50% of the outstanding indebtedness had agreed to waive the default, and as such, there was no default at the time. Gallagher Aff., ¶ 24 and Exh. J.

### Defendant's Statement No. 12

On December 20, 2007, USI's counsel, Kaye Scholer, wrote Citibank to advise it that Citibank was not entitled to declare an Event of Default under the Swap Agreement because the default "was waived by the majority lenders under the Credit Agreement." Bernstein Decl., Exh. B.

### Defendant's Statement No. 13

Citibank had more than $17 million in outstanding letters of credit ("LCs"), which supported USI's liability insurance program. The LCs were due to expire on January 31, 2008, but would renew automatically unless Citibank advised USI by December 31, 2007 that it would not renew them. Citibank renewed the LCs in early 2008. Gallagher Aff., ¶ 33.

Dated: New York, New York
       July 25, 2008

VANDENBERG & FELIU, LLP

By: _____
    Robert B. Bernstein (RB 1934)
    Jeffrey Gross (JG 5200)
110 East 42nd Street
New York, NY 10017
Phone: (212) 763-6800
Fax:   (212) 763-6823
Attorneys for Defendant United Subcontractors Inc.