UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
CITIBANK, N.A.,

         Plaintiff,  : 08 Civ. 00569 (MGC)

    - against -

UNITED SUBCONTRACTORS INC.,

         Defendant.
--------------------------------------------------------------- x


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
CITIBANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

## Table of Contents

**Page**

Table of Authorities ............................................................................................................ ii

Preliminary Statement ........................................................................................................ 1

Argument ........................................................................................................................... 2

I. CITIBANK IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM BASED ON USI'S BREACH OF THE SWAP AGREEMENT ............................................................. 2

    A.    USI Admits That Its Default Under the Credit Agreement Triggered Its Default .......... 2

    B.    USI's "Waiver" Defense Fails As A Matter of Law And Indisputable Fact ................... 3

        i.    The December 27, 2007 Waiver and Amendment ................................................. 3

        ii.    The Defaults Under the Credit Agreement Continued .......................................... 5

    C.    USI's Good Faith Defense is Meritless ......................................................................... 6

Conclusion ....................................................................................................................... 10

## Table of Authorities

**Page(s)**

### Federal Cases

*Barclays Business Credit, Inc. v. Inter Urban Broadcasting of Cincinnati, Inc.*,
   No. 90 Civ. 2272, 1991 U.S. Dist. LEXIS 17473 (S.D.N.Y. Nov. 27, 1991) .......................7 n.8

*Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.*,
   212 F. Supp. 2d 233 (S.D.N.Y. 2002) ..............................................................................8

*Brown v. Avemco Investment Corp.*,
   603 F.2d 1367 (9th Cir. 1979) ...........................................................................................7 n.7

*Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce,
   Fenner & Smith Inc.*, 232 F.3d 153 (2d Cir. 2000) ..........................................................5 n.5

*Continental Casualty Co. v. State of New York Mortgage Agency*,
   No. 94 Civ. 8408, 1998 U.S. Dist. LEXIS 12784 (S.D.N.Y. Aug. 5, 1998) .....................8

*DBT Bmbh v. J.L. Mining Co.*,
   544 F. Supp. 2d 364 (S.D.N.Y. 2008) ..............................................................................5 n.5

*DCMR v. Trident Precision Manufacturing*,
   317 F. Supp. 2d 220 (W.D.N.Y. 2004) .............................................................................6, 8

*Daiwa Special Assets Corp. v. Desnick*,
   No. 00 Civ. 3856, 2002 U.S. Dist. LEXIS 16164 (S.D.N.Y. Aug. 28, 2002) ...................2, 3

*Grand Light & Supply Co., Inc. v. Honeywell, Inc.*,
   771 F.2d 672 (2d Cir. 1985) ..............................................................................................7 n.8

*Gruppo, Levey & Co. v. ICOM Information & Communications, Inc.*,
   No. 01 Civ. 8922, 2003 U.S. Dist. LEXIS 11213 (S.D.N.Y. July 1, 2003) .....................8

*John F. Dillon & Co., LLC v. Foremost Maritime Corp.*,
   No. 02 Civ. 7803, 2004 U.S. LEXIS 11303 (S.D.N.Y. June 21, 2004) ............................8

*LaSalle Bank National Association v. Nomura Asset Capital Corp.*,
   424 F.3d 195 (2d Cir. 2005) ..............................................................................................4

*National Westminster Bank, U.S.A. v. Ross*,
   No. 86 Civ. 6277, 1991 U.S. Dist. LEXIS 10586 (S.D.N.Y. July 31, 1991) ....................7

KL3 2669772.6

*New Maine National Bank v. Liberty*,
  778 F. Supp. 86 (D. Me. 1991) ............................................................................. 2, 3

*PNC Bank N.A. v. Person*,
  No. 06-292-C, 2007 U.S. Dist. LEXIS 71804 (W.D. Ky. Sept. 26, 2007) .................. 3

*PaineWebber Inc. v. Bybyk*,
  81 F.3d 1193 (2d Cir. 1996) ...................................................................................... 4

*Procter & Gamble Co. v. Bankers Trust Co.*,
  925 F. Supp. 1270 (S.D. Ohio 1996) .................................................................... 6 n.6

*Sterbenz v. Attina*,
  205 F. Supp. 2d 65 (E.D.N.Y. 2002) ........................................................................... 6

*Suthers v. Amgen, Inc.*,
  441 F. Supp. 2d 478 (S.D.N.Y. 2006) ......................................................................... 7

### State Cases

*Canterbury Realty & Equip. Corp. v. Poughkeepsie Savings Bank*,
  135 A.D.2d 102 (App. Div. 3d Dep't 1988) ................................................. 7 n.7, 8, 9

### Statutes

Fed. R. Civ. P. 56 .............................................................................................................. 1

N.Y.U.C.C. § 1-101 *et seq* ............................................................................................... 6

N.Y.U.C.C. § 1-208 ....................................................................................................... 6, 7

KL3 2669772.6

**Preliminary Statement**

Plaintiff Citibank, N.A. ("Citibank") respectfully submits this reply memorandum of law in further support of its motion, pursuant to Fed. R. Civ. P. 56, for summary judgment on its claim for breach of the Swap Agreement against defendant United Subcontractors Inc. ("USI").[1]

    USI's opposition is significant only for its critical admissions that:

(i)    The Swap Agreement gave Citibank the right to declare a default if USI defaulted under the Credit Agreement (*i.e.*, a Cross Default). (USI Mem. at p. 10); and

(ii)    USI defaulted under the Credit Agreement. (*Id.*).

Faced with these dispositive admissions, USI makes the newly minted argument that its default had been waived by lenders under the Credit Agreement, notwithstanding the uncontroverted facts that the Waiver and Amendment – amending the $335 million credit facility with over one hundred lenders established in the Credit Agreement – did not become effective by its own terms until nine days <u>after</u> Citibank had already terminated the Swap Transactions, and that, in any event, in the Waiver and Amendment, USI acknowledged its "multiple Events of Default" which have "occurred and are continuing" under the Credit Agreement.

USI's opposition is exposed for what it is – an after the fact rationalization of its attempt to welsh on its obligations to Citibank after Citibank properly terminated the Swap Transactions in accordance with the specific terms of the Swap Agreement. As set forth in Citibank's opening brief, there are no material facts in dispute: Citibank is entitled to summary

---

[1] Terms defined in this reply are the same as those set forth in Citibank's opening brief.

KL3 2669772.6

judgment in the amount of $2,751,333 plus interest at the Default Rate (as defined in the Swap Agreement).[2]

## Argument

### I.

### CITIBANK IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM BASED ON USI'S BREACH OF THE SWAP AGREEMENT

A.  USI Admits That Its Default Under the Credit Agreement Triggered Its Default Under the Swap Agreement

USI admits that the Swap Agreement's Cross Default provision (Moving Affidavit of Carl S. Cho ("Cho Aff."), Exh. B at Section 5(a)(vi)(1)) gave Citibank the right to declare a default if USI defaulted under the Credit Agreement. (USI Mem. at p. 10). USI also admits that it defaulted under the Credit Agreement by failing to maintain required interest coverage and leverage ratios and that it formally provided Citibank Notice of its Defaults. (*Id.* at p. 4).[3]

As discussed in Citibank's opening brief, *Daiwa Special Assets Corp. v. Desnick*, No. 00 Civ. 3856, 2002 U.S. Dist. LEXIS 16164 (S.D.N.Y. Aug. 28, 2002), is directly on point. As in the Swap Agreement, the agreements in *Daiwa* contained unambiguous cross default provisions. The court granted Daiwa summary judgment, in part, because the agreement at issue gave Daiwa the right to declare a default pursuant to a cross default provision. *Id.* at *19, 61. *See also New Maine Nat'l Bank v. Liberty*, 778 F. Supp. 86, 90-91 (D. Me. 1991) (as a matter of

---

[2] Although USI disputes liability, USI does not contest the amount owed under the Swap Agreement.

[3] USI attempts to minimize the significance of its defaults by characterizing them as a "technical default." (*See e.g., id.* at pp. 3 and 6). While violations of loan covenants with financial institutions are hardly "technical defaults", neither the Swap Agreement nor the Credit Agreement makes any such distinctions. USI admits, as it must, that its defaults under the Credit Agreement triggered its default under the Swap Agreement.

law cross default provision was unambiguous and entitled plaintiff to summary judgment on guarantees). USI's attempt to distinguish *Daiwa* by arguing that the defendant there was in greater financial distress than USI is a distinction without a difference.[4] USI was in default of its loan covenants and Citibank admittedly had the right to terminate the Swap Transactions. As in *Daiwa*, the Swap Agreement's Cross Default provision compels summary judgment for Citibank. *See also PNC Bank N.A. v. Person*, No. 06-292-C, 2007 U.S. Dist. LEXIS 71804 (W.D. Ky. Sept. 26, 2007) (court granted bank's motion for summary judgment upholding the bank's right to declare a default under a cross default provision).

    B.    USI's "Waiver" Defense Fails As A Matter of Law And Indisputable Fact

        i.    The December 27, 2007 Waiver and Amendment

While USI's admitted defaults should end the inquiry, USI contrives the argument – by torturing the language of the Credit Agreement – that the lenders under the Credit Agreement "waived" USI's defaults prior to Citibank's termination of the Swap Transactions. USI's argument smacks of sheer desperation and fails to raise a factual issue.

USI admits – as it must – that the Waiver and Amendment was not executed and did not come into effect until December 27, 2007. (USI Mem. at 11; Affidavit of Timothy J. Gallagher Aff. ("Gallagher Aff."), Exh. L at 3.2(a)). By its very terms the Waiver and Amendment provides that:

> "the Requisite Lenders agree to temporarily waive the Existing Defaults solely for the period (the "Waiver Period") commencing on the date hereof . . . ." (Section 3.2(a)).

The "date hereof" referenced in Section 3.2 of the Waiver and Amendment is December 27, 2007 – nine days after the Swap Transactions had been terminated. (Gallagher Aff., Exh. L at p.

---

[4] In so arguing, USI ignores its "multiple Events of Default" under the Credit Agreement.

1). Moreover, the Waiver and Amendment provides that the Requisite Lenders waive Events of Default "solely for the period and on the terms and conditions specified herein." (*Id.*).

> Section 10.04 of the Credit Agreement provides:
>
> • "Amendment and Waivers"
>
> (a) Requisite Lenders' Consent. Subject to Sections 10.04(b) and Section 10.04(c), no amendment, modification, termination or waiver of any provision of the Loan Documents, or consent to any departure by any Loan Party therefrom, shall in any event be effective without the written consent of the Requisite Lenders. (Cho. Aff., Exh. A at p. 116).

USI ignores the language of the Credit Agreement and the Waiver and Amendment, and instead references a couple of emails and a single document which was marked **"DRAFT"** that pre-dated the Waiver and Amendment in arguing that the Requisite Lenders had given the necessary concurrence prior to executing the Waiver and Amendment and prior to Citibank's termination of the Swap Transactions. (*See* Gallagher Aff., Exh. D; bold and capitalization in original). USI's contention contradicts the plain meaning as well as the clear terms of the Waiver and Amendment which required that the Waiver and Amendment be signed, that it was subject to the "terms and conditions specified herein", and that such Waiver and Amendment did not become effective until December 27, 2007, nine days after the Swap Transactions were terminated. (Gallagher Aff., Exh. L at p. 1 and Section 3.2(a)).

USI's argument ignores the fundamental principle of contract interpretation that the plain meaning of words and phrases is to be used when construing a contract. *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (under New York law, words and phrases should be given their plain meaning); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) (same). The plain meaning of "written concurrence" under Section 10.04 of the Credit Agreement is that any waivers and amendments to that agreement,

which would memorialize a change to a $335 million credit facility with over one hundred lenders, would be effective only upon the execution of an amendment such as the Waiver and Amendment and specifically subject to its specific terms and conditions. Indeed, USI and the Lenders were negotiating the terms of that Waiver and Amendment since November and did not finalize it until December 27. (*See* Cho Aff., Exhs. I and J). And, as set forth above, the Waiver and Amendment did not become effective by its very own terms until December 27, 2007 – nine days after the Swap Transactions had been terminated.[5]

        ii.      <u>The Defaults Under the Credit Agreement Continued</u>

As explained in Citibank's opening brief, USI acknowledged in the Waiver and Amendment that USI's defaults under the Credit Agreement constitute "multiple Events of Default," that those defaults "are continuing" and that the "Existing Defaults" are Events of Default and treated as such.

Thus, even ignoring the fact that Citibank had terminated the Swap Transactions prior to the effective date of the Waiver and Amendment, USI's default under the Credit Agreement admittedly continued and the Cross Default provision continued to apply.

---

[5] Even if the Court were to find the phrase "written concurrence" to be ambiguous, a position that Citibank disputes, the Court may still grant summary judgment in Citibank's favor. On motions for summary judgment involving contract disputes, a court "may resolve ambiguity in contractual language as a matter of law 'if there is no extrinsic evidence to support one party's interpretation of the ambiguous language or if the extrinsic evidence is [so one-sided] that no reasonable factfinder could decide contrary to one party's interpretation.'" *DBT Bmbh v. J.L. Mining Co.*, 544 F. Supp. 2d 364, 376 (S.D.N.Y. 2008) (quoting *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 159 (2d Cir. 2000)). USI has not submitted any extrinsic evidence – nor could it – to support its position that the Waiver and Amendment somehow became effective prior to December 27, 2007.

C.   USI's Good Faith Defense is Meritless

USI's argument that Citibank could not terminate the Swap Transactions "unless it had a good faith belief that its prospects for payment were impaired" is spun of whole cloth and contradicts the Swap Agreement's Cross Default provision.

Here, Citibank terminated the Swap Transactions in accordance with its express bargained-for rights under the Swap Agreement – a cross default under the Credit Agreement. There is simply no obligation – contractual or otherwise – that Citibank had to first analyze and then subjectively believe that "its prospects for payment were impaired" before invoking the Cross Default provision as USI contends. It is well-settled that a party does not violate the duty of good faith and fair dealing by exercising its rights under the contract. *DCMR v. Trident Precision Mfg.*, 317 F. Supp. 2d 220, 226 (W.D.N.Y. 2004); *Sterbenz v. Attina*, 205 F. Supp. 2d 65, 70 (E.D.N.Y. 2002).

As discussed in Citibank's opening brief, USI is badly mistaken that UCC § 1-208 mandates that Citibank was required to analyze and then determine that USI's prospects for payment or performance were impaired before invoking the Cross Default provision.

First, the UCC does not apply to the Swap Transactions. The UCC applies only to sales contracts, leases, commercial paper, bank deposits and collections, funds transfers, letters of credit, warehouse receipts, investment securities and secured transactions. *See* N.Y.U.C.C. § 1-101 *et seq.*[6]

---

[6] In support of its argument that the UCC applies to the Swap Agreement, USI cites *Procter & Gamble Co. v. Bankers Trust Co.*, 925 F. Supp. 1270 (S.D. Ohio 1996). USI's reliance on *Procter* is misplaced because *Procter* stands only for the unremarkable proposition that New York law imposes an obligation of good faith on all contracts. In *Procter*, wherein the district court in Ohio granted defendant summary judgment dismissing claims for breach of fiduciary duty under New York law, the court assumed the UCC applied to the transaction. It does not appear that the applicability of the UCC was at issue.

Second, UCC Section 1-208 on its face applies solely to an agreement specifically providing that a party may accelerate payment or performance or require collateral or additional collateral "at will or when he deems himself insecure or in words of similar import." On its face, the Cross Default provision is not such an acceleration clause within the limited confines of UCC Section 1-208, assuming that the UCC were even to apply.[7]

There is no dispute that under New York law all contracts contain an implied covenant of good faith and fair dealing. However, New York law is also clear that the implied covenant of good faith and fair dealing cannot be used to create new contractual obligations – as USI seeks to do – that conflict with express provisions in the contract. *See Nat'l Westminster Bank, U.S.A. v. Ross*, No. 86 Civ. 6277, 1991 U.S. Dist. LEXIS 10586, at \*\*59 (S.D.N.Y. July 31, 1991) ("[t]he parties' contractual rights and liabilities may not be varied, *nor their terms eviscerated*, by a claim that one party has exercised a contractual right but has failed to do so in good faith") (emphasis added); *Suthers v. Amgen, Inc.*, 441 F. Supp. 2d 478, 485 (S.D.N.Y. 2006) (parties cannot rely on the implied covenant of good faith and fair dealing to add substantive provisions to a contract).[8]

Even assuming *arguendo* that USI's good faith defense was viable, USI's submissions do not raise any genuine issues of material fact and courts routinely grant summary

---

[7] USI's reliance on *Canterbury Realty & Equip. Corp. v. Poughkeepsie Savings Bank*, 135 A.D.2d 102 (App. Div. 3d Dep't 1988), and *Brown v. Avemco Investment Corp.*, 603 F.2d 1367 (9th Cir. 1979), similarly is misplaced because in those cases the contracts at issue contained the specific acceleration clauses contemplated by UCC Section 1-208 in a lender-borrower relationship.

[8] *See also Grand Light & Supply Co., Inc. v. Honeywell, Inc.*, 771 F.2d 672, 679 (2d Cir. 1985) (court held that UCC good faith provision could not override explicit termination provision in contract); *Barclays Business Credit, Inc. v. Inter Urban Broadcasting of Cincinnati, Inc.*, No. 90 Civ. 2272, 1991 U.S. Dist. LEXIS 17473, at \*19-20 (S.D.N.Y. Nov. 27, 1991) (the UCC's obligation of good faith cannot be used to require a party "to forego or surrender a right that it otherwise possesses").

judgment on claims such as these. *See e.g., John F. Dillon & Co., LLC v. Foremost Maritime Corp.*, No. 02 Civ. 7803, 2004 U.S. LEXIS 11303, at *10 (S.D.N.Y. June 21, 2004); *DCMR*, 317 F. Supp. 2d at 226; *Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.*, 212 F. Supp. 2d 233, 250-251 (S.D.N.Y. 2002). To prove a breach of the implied covenant of good faith and fair dealing, USI must show that Citibank engaged in fraud, acted with malice or reckless indifference, acted in bad faith, or engaged in other intentional wrongdoing. *Continental Casualty Co. v. State of New York Mortgage Agency*, No. 94 Civ. 8408, 1998 U.S. Dist. LEXIS 12784, *44 (S.D.N.Y. Aug. 5, 1998). Here, USI makes only conclusory allegations which are not sufficient to defeat summary judgment.

For example, USI suggests that Citibank "was trying to extort more fees or profits at USI's expense" in connection with Citibank's helping USI obtain an amendment to the Credit Agreement when USI realized it would default under that agreement. (USI Mem. at 20). However, nothing in the documents submitted by USI supports this spurious allegation, nor would seeking an above-market fee (if that were true) rise to the level of bad faith. Courts routinely recognize that parties do not violate the duty of good faith merely by acting in their own self interest. *See e.g., John F. Dillon & Co., LLC*, 2004 U.S. Dist. LEXIS 11383, at *24 (defendant could not be liable for breach of good faith because defendant "acted out of a desire to protect its own financial situation, and not out of bad faith to injure [plaintiff]."); *Gruppo, Levey & Co. v. ICOM Information & Communications, Inc.*, No. 01 Civ. 8922, 2003 U.S. Dist. LEXIS 11213, at *28 (S.D.N.Y. July 1, 2003) (good faith does not "prevent a party from acting in its own interests *even if the result is to incidentally lessen the value the other party expected to receive from the contract*") (emphasis added).

KL3 2669772.6

Finally, USI suggests that Citibank terminated the Swap Transactions with "unnecessary haste" and that might signal bad faith as in the *Canterbury Realty* case. (*See* USI Mem. at 16-17). However, unlike in *Canterbury* where the defendant bank gave no prior notice that it would stop honoring plaintiff's checks, here, USI provided Citibank with formal notice of its default (Cho Aff., Exh. D) and Citibank then provided USI with written notice before Citibank exercised its rights to terminate the Swap Transactions. (Cho. Aff., Exh. E).

In short, USI's "bad faith" defense is mere makeweight and cannot overcome Citibank's contractual rights under the Swap Agreement. Citibank's motion for summary judgment should be granted in its entirety.[9]

---

[9] USI fails to address, and thus appears to have abandoned, its estoppel and unclean hands defenses.

## Conclusion

For the foregoing reasons, Citibank respectfully requests that the Court grant its motion for summary judgment (i) on its Claim for Relief against USI for breach of contract and award Citibank judgment in the amount of $2,751,333 plus interest at the Default Rate, and (ii) dismiss USI's counterclaim, together with such other, further and different relief as the Court deems just and proper.

Dated: New York, New York
      August 8, 2008

Respectfully submitted,

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: _____
    Marshall H. Fishman (MF-4944)
    Erin E. Oshiro (EO-8878)

1177 Avenue of the Americas
New York, New York 10036
Tel.: (212) 715-9100
mfishman@kramerlevin.com
eoshiro@kramerlevin.com

Attorneys for Plaintiff