UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————— x
CITIBANK, N.A., :
: 
                             Plaintiff, : 08 Civ. 00569 (MGC)
:
     - against - :
: Plaintiff Citibank, N.A.'s
UNITED SUBCONTRACTORS INC., : Response to Defendant's
: Counter-Statement Pursuant
                         Defendant. : to Local Rule 56.1
:
———————————————————— x

      Pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, plaintiff Citibank, N.A. ("Citibank") respectfully responds to the Defendant's Response to Citibank, N.A.'s Statement Pursuant to Local Rule 56.1 and Counter-Statement ("USI's Counterstatement"). Citibank's responses are limited to defendant's additional statements of purported material facts in dispute contained in USI's Counterstatement.

### USI's Counterstatement No. 1

USI contacted Citibank when it anticipated that its future quarterly earnings would cause a default of certain financial covenant rations [sic] by the end of the third or fourth quarter of 2007. Citibank stated that its non-negotiable fee for taking the lead in negotiations to amend the Credit Agreement would be $1.5 million. Gallagher Aff., ¶¶ 11-12.

### Citibank's Response:

USI's counterstatement does not contain material facts and does not provide a defense to Citibank's claim for breach of contract.

### USI's Counterstatement No. 2

Under Section 10.04 of the Credit Agreement, lenders holding more than 50% of the outstanding debt ("the Requisite Lenders") can waive a default by providing their "written concurrence." "Written concurrence" does not require a fully executed agreement. Gallagher Aff., ¶ 12 and Exh. A.

KL3 2670185.2

-2-

### Citibank's Response:

Citibank objects to this counterstatement because it is a legal conclusion and not a statement of material fact. Defendant's allegation is contradicted by the terms of Section 10.04 of the Credit Agreement.

### USI's Counterstatement No. 3

The Requisite Lenders were represented by Cahill Gordon & Reindel LLP ("Cahill Gordon"), who were also Citibank's counsel. Gallagher Aff., ¶13.

### Citibank's Response:

USI's counterstatement does not contain material facts and does not provide a defense to Citibank's claim for breach of contract.

### USI's Counterstatement No. 4

On November 20, 2007, counsel for the Requisite Lenders circulated a Term Sheet to modify the financial covenants in the Credit Agreement and waive the default. The Term Sheet provided for a waiver by the Requisite Lenders of "the default caused by the Borrower's failure to comply with the financial covenants set forth in Section 6.08 of the First Lien Credit Agreement for the Fiscal Quarter ending September 30, 2007." The Note accompanying the Term Sheet stated in pertinent part as follows: "The Term Sheet has been drafted by Lender counsel, Cahill Gordon & Reindel, and has been agreed with the First Lien Lender Steering Committee, which represents a majority of the First Lien Term Loan Lenders." The Note and Term Sheet reflected the Requisite Lenders' "written concurrence" to the default. Gallagher Aff., ¶ 15 and Exh. D.

### Citibank's Response:

The Term Sheet circulated on November 20, 2007, was marked "**DRAFT**" on every single page. (*See* Affidavit of Timothy J. Gallagher ("Gallagher Affidavit"), Exh. D) (bold and capitalization in original). On its face, this was a preliminary document outlining the potential terms of the Waiver and Amendment still being negotiated. Furthermore, Citibank objects to this counterstatement because it is a legal conclusion, not a statement of material fact and defendant's allegation is contradicted by the terms of Section 10.04 of the Credit Agreement.

### USI's Counterstatement No. 5

The Term Sheet circulated on November 20, 2007 set forth, as a condition precedent to the amendment's effectiveness, that there would be amendment to two other agreements, the Second Lien Credit Agreement and an Intercreditor Agreement. Citibank was a creditor in the Second Lien and Credit Agreement. Gallagher Aff., ¶¶ 15-16 and Exh. D.

**Citibank's Response:**

USI's counterstatement does not contain material facts and does not provide a defense to Citibank's claim for breach of contract.

**USI's Counterstatement No. 6**

When Citibank advised USI on December 12, 2007 that it was declaring an Event of Default under the Swap Agreement and that Citibank intended to terminate the swaps, it had no reason to believe that its prospects for repayment or performance had been impaired. Gallagher Aff., ¶¶ 10, 18-19, 30-33 and Exh. E.

**Citibank's Response:**

USI's counterstatement does not contain material facts and does not provide a defense to Citibank's claim for breach of contract. Also, USI's contention that Citibank had no reason to believe its prospects for repayment or performance had been impaired is a conclusory assertion without any factual support.

**USI's Counterstatement No. 7**

At USI's request on December 12, 2007, the Requisite Lenders agreed not to tie their "written concurrence" to the default waiver to amending the Second Lien Credit Agreement and the Intercreditor Agreement. The Requisite Lenders had already effectively agreed to forebear from exercising their rights concerning the Credit Agreement default. Gallagher Aff., ¶¶ 19-20 and Exh. F.

**Citibank's Response:**

Citibank objects to this counterstatement because it is a legal conclusion, not a statement of material fact, is not supported by USI's submissions and is contradicted by the Waiver and Amendment Agreement which provides that the "Requisite Lenders are willing to agree to waive [USI's] Events of Default, solely for the period and on the terms and conditions specified herein". Citibank further submits that this counterstatement is speculation, not material, and based on inadmissible hearsay. In paragraph 20 of the Gallagher Affidavit, for example, Mr. Gallagher purports to recount actions taken by the Requisite Lenders during mid-December 2007. However, this is inadmissible hearsay and speculation since Mr. Gallagher relies only upon reports that he received from unidentified sources: "I am *informed that* the Requisite Lenders immediately instructed Cahill Gordon" or "I am *further informed* that . . . ." (Gallagher Affidavit, ¶ 20).

**USI's Counterstatement No. 8**

On or about December 13, 2007, the Requisite Lenders instructed Cahill Gordon to prepare a Default Waiver that did not require amending the Second Lien Credit Agreement and the Intercreditor Agreement. Cahill Gordon circulated a draft Default Waiver to the Requisite Lenders for their approval on the evening of December 13, 2007. On the afternoon of December 14, 2007, Cahill Gordon sent a revised agreement to the Requisite Lenders for their

approval, and instructed them that absent any objection, it would forward a copy to USI. Bernstein Decl., Exh. A.

### Citibank's Response:

USI's counterstatement does not contain material facts and does not provide a defense to Citibank's claim for breach of contract. Citibank further objects to this counterstatement because it is based on inadmissible hearsay. The emails attached to the Declaration of Robert B. Berstein ("Bernstein Declaration") were not prepared by or sent to USI and are not admissible for purposes of summary judgment.

### USI's Counterstatement No. 9

On December 14, 2007, Cahill Gordon sent USI a draft Waiver and Amendment on behalf of the Requisite Lenders. This document reflected the second "written concurrence" of the Requisite Lenders to the waiver of the default that had been the subject of USI's Notice of Default. Gallagher Aff., ¶¶ 21-22 and Exh. H.

### Citibank's Response:

Citibank objects to this counterstatement because it is a legal conclusion and not a statement of material fact. Defendant's allegation is contradicted by the terms of Section 10.04 of the Credit Agreement and by the Waiver and Amendment Agreement which provides that the "Requisite Lenders are willing to agree to waive [USI's] Events of Default solely for the period and on the terms and conditions specified herein".

### USI's Counterstatement No. 10

As of December 14, 2007, Citibank either knew directly, or knew based on their counsel's knowledge, that the Requisite Lenders had provided their "written concurrence" to the waiver of the default under the Credit Agreement. Gallagher Aff., ¶¶ 15, 20-22 and Exhs. D, G, H; Bernstein Decl., Exh. A.

### Citibank's Response:

Citibank objects to this counterstatement because it is a legal conclusion and not a statement of material fact. Defendant's allegation is contradicted by the terms of Section 10.04 of the Credit Agreement and by the Waiver and Amendment Agreement which provides that the "Requisite Lenders are willing to agree to waive [USI's] Events of Default solely for the period and on the terms and conditions specified herein".

### USI's Counterstatement No. 11

On December 18, 2007, hours after Citibank notified USI that it would seek to terminate the swaps on the day, USI responded by fax, advising Citibank that lenders who held more than 50% of the outstanding indebtedness had agreed to waive the default, and as such, there was no default at the time. Gallagher Aff., ¶ 24 and Exh. J.

### Citibank's Response:

USI's counterstatement does not contain material facts and does not provide a defense to Citibank's claim for breach of contract. Citibank admits that on December 18, 2007, USI sent to Citibank the fax attached as Exhibit J to the Gallagher Affidavit.

### USI's Counterstatement No. 12

On December 20, 2007, USI's counsel, Kaye Scholer, wrote Citibank to advise it that Citibank was not entitled to declare an Event of Default under the Swap Agreement because the default "was waived by the majority lenders under the Credit Agreement." Bernstein Decl., Exh. B.

### Citibank's Response:

USI's counterstatement does not contain material facts and does not provide a defense to Citibank's claim for breach of contract. Citibank admits that on December 20, 2007, USI's counsel sent to Citibank the letter attached as Exhibit B to the Bernstein Declaration.

### USI's Counterstatement No. 13

Citibank had more than $17 million in outstanding letters of credit ("LCs"), which supported USI's liability insurance program. The LCs were due to expire on January 31, 2008, but would renew automatically unless Citibank advised USI by December 31, 2007 that it would not renew them. Citibank renewed the LCs in early 2008. Gallagher Aff., ¶ 33.

### Citibank's Response:

USI's counterstatement does not contain material facts and does not provide a defense to Citibank's claim for breach of contract.

Dated: New York, New York
       August 8, 2008

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: _____
    Marshall H. Fishman (MF-4944)
    Erin E. Oshiro (EO-8878)
1177 Avenue of the Americas
New York, New York 10036
Tel.: (212) 715-9100
mfishman@kramerlevin.com
eoshiro@kramerlevin.com

Attorneys for Plaintiff

KL3 2670185.2

Index No. 08 Civ. 00569 (MGC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITIBANK, N.A.,

                                                      Plaintiff,

- against -

UNITED SUBCONTRACTORS INC.,

                                                      Defendant.

---

**PLAINTIFF CITIBANK N.A.'S RESPONSE TO DEFENDANT'S COUNTER-STATEMENT PURSUANT TO LOCAL RULE 56.1**

---

KRAMER LEVIN NAFTALIS & FRANKEL LLP
*Attorneys for Plaintiff*

1177 Avenue of the Americas  New York, New York  10036
(212) 715-9100

*All communications should be referred to:*
Marshall H. Fishman
Erin E. Oshiro